# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| IRYNA ZAYIKA, Individually and on Behalf of All Others Similarly Situated, | Case No.: 20-cv-88 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| CENTRAL COLLECTION CORPORATION, | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Iryna Zayika is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff debts allegedly incurred for personal, family, or household purposes, namely medical debts.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt arose from one or more consumer transactions that included agreements to defer payment.

6. Defendant Central Collection Corporation ("CCC") is a debt collection agency with its principal offices at 3055 North Brookfield Road, Suite 31, Brookfield, Wisconsin 53045.

7. CCC is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. CCC is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. CCC is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

10. CCC is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *June 25, 2019 Letter*

11. On or about June 25, 2019, CCC mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Endodontic Specialists of WI" ("ESW"). A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt listed in Exhibit A was incurred as the result of a transaction for personal medical in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g., Kelly v. Montgomery*

2

*Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred … in exchange for medical services …. Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

15. Upon information and belief, Exhibit A is the first written communication that Defendant mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

16. Exhibit A contains language that largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail to the consumer along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

17. The header in Exhibit A contains the following:

> Account Number:  ▮▮▮244-▮▮▮823
> Creditor:        Endodontic Specialists of WI
> Total Due:       $203.80

18. The bottom portion of Exhibit A is a payment remittance slip that the consumer is supposed to detach and return to Defendant along with any payment.

3

19. The payment remittance slip on Exhibit A states the following:

> Account Number: ███244-███823
> Creditor: Endodontic Specialists of WI
> Total Due: $203.80

20. The body in Exhibit A states the following:

> As of the date of this letter, you owe the total amount due shown above.
>
> Be advised future interest may be assessed as allowed under State Law until this account is paid in full. Because of the interest charges that may accrue after the date of this letter, the amount due on the day you pay may be greater. Hence, if you pay the amount shown on this letter, an adjustment may be necessary after we receive your payment, in which event we will notify you prior to processing your payment.

21. Exhibit A states that, as of June 25, 2019, Plaintiff owed a "Total Due" of $203.80 but that this amount could increase in the future "because of the interest charges that may accrue after the date of this letter, the amount due on the day you pay may be greater."

22. On or about July 29, 2019, CCC mailed another debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this complaint as Exhibit B.

23. Upon information and belief, Exhibit B is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

24. Upon information and belief, Exhibit B is another form debt collection letter used by Defendant to attempt to collect alleged debts.

25. The header in Exhibit B contains the following:

> Account Number:   See Account List on Reverse Side
> Creditor(s):      See Account List on Reverse Side
> Total Due:        $214.94

26. The bottom portion of Exhibit B is a payment remittance slip that the consumer is supposed to detach and return to Defendant along with any payment.

27. The payment remittance slip in Exhibit B contains the following:

> Account Number: See Account List on Reverse Side
> Creditor(s): See Account List on Reverse Side
> Total Due: $214.94

4

28. The reverse side of <u>Exhibit B</u> contains the following:

```
ACCOUNT/DEBTOR #        CREDITOR(S)                    TOTAL
    244-    823         Endodontic Specialists of      214.94
```

29. The "ACCOUNT / DEBTOR #" stated on the "Reverse Side" of <u>Exhibit B</u> ends in 244 and 823.

30. The "Account Number" stated in <u>Exhibit A</u> ended in 244 and 823.

31. <u>Exhibit A</u> states that, as of June 25, 2019, the amount of the debt was $203.80, and further states that the amount may increase "because of interest charges that may accrue after the date of this letter."

32. <u>Exhibit B</u>, mailed on July 29, 2019 (about 34 days after <u>Exhibit A</u>), attempts to collect the same alleged debt, this time in the amount of $214.94.

33. The difference between the amount sought on June 25, 2019 and the amount sought on July 29, 2019 is more than $11.00.

34. <u>Exhibit B</u> further states:

> As of the date of this letter, you owe the total amount due shown above.
>
> Be advised future interest may be assessed as allowed under State Law until this account is paid in full. Because of the interest charges that may accrue after the date of this letter, the amount due on the day you pay may be greater. Hence, if you pay the amount shown on this letter, an adjustment may be necessary after we receive your payment, in which event we will notify you prior to processing your payment.

35. Assuming the balance as of June 25, 2019 was $203.80, as stated in <u>Exhibit A</u>, the debt could not accumulate $11.00 in interest by July 29, 2019 unless the annual rate of interest was 50% or more.

36. Defendant was not authorized to assess interest on the debt referenced in <u>Exhibits A & B</u> at an annual rate of 50%.

37. Upon information and belief, Plaintiff did not agree to an annual interest rate of 50%, an exorbitant rate usually reserved for "fast cash" loan debts that does not typically apply to debts associated with medical services like those referenced in Exhibits A & B.

38. The account referenced in Exhibits A & B has not been brought to judgment. Thus, even assuming without conceding that the debt is a liquidated amount, the amount of the debt in Exhibit B could be no more than $204.78 (98 cents more than Exhibit A) on the date Exhibit B was mailed. Wis. Stat. § 138.04 (setting the statutory interest rate at 5%).

39. Upon information and belief, Exhibit B sought to collect an amount of interest that was not agreed to in advance or authorized under State law. *See* Wis. Stat. § 138.04; *see also, e.g., Trease v. Tri-State Adjustments, Inc.*, 934 F. Supp. 2d 1016, 1020 (E.D. Wis. 2013) ("Because plaintiff's alleged debts arose out of a contract for medical services, § 138.04 provides the applicable rate of interest."); *Myers v. Americollect Inc.*, Nos. 15-c-0002, 15-c-0613, 2016 U.S. Dist. LEXIS 136941, at *18-19 (E.D. Wis. Sept. 30, 2016) (quoting *Trease*), *aff'd sub nom., Aker v. Americollect, Inc.*, 854 F.3d 397 (7th Cir. 2017).

40. In the alternative, upon information and belief, Exhibit A understated the amount of the debt.

41. In either case, the representation that the debt had accumulated more than $11.00 in interest between the dates of Exhibits A & B is materially misleading and unfair to the consumer, who would feel intimidated into paying the debt as quickly as possible upon receipt of Exhibit B in order to minimize future interest charges. *See, e.g., Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 368 (7th Cir. 2018).

42. Upon information and belief, Exhibits A & B are a pre-contemplated "series" of letters. In the event that the consumer does not respond to Exhibit A within approximately 34

6

days of the mailing of Exhibit A, Defendant automatically mails Exhibit B and uses an automatic process to calculate the amount sought in Exhibit B.

43. At the time Defendant mailed Exhibits A & B and programmed the automatic process used to calculate the amount sought in Exhibit B, Defendant knew that the interest amount implied by Exhibit B was exorbitant and unlawful, and further knew that this unlawful and exorbitant interest rate would incentivize consumers to prioritize the debts that Defendant sought.

44. Plaintiff read Exhibits A & B.

45. Plaintiff reviewed and was confused and misled by Exhibits A & B.

46. The unsophisticated consumer would be confused by Exhibits A & B.

### *The FDCPA*

47. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) (" 'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.' ") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a

7

misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same);

8

*see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

48. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

49. Misrepresentations of the character, amount or legal status of any debt, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("an informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress

9

Case 2:20-cv-00088-NJ    Filed 01/20/20    Page 9 of 17    Document 1

gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

50. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

51. 15 U.S.C. § 1692e(2)(A) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

52. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

53. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

54. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

55. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

10

56. 15 U.S.C. § 1692g(a) states:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

57. The debt collector must state the correct amount of the debt in a non-confusing manner. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016) (citing *Chuway*, 362 F.3d at 947); *see also, Ozier v. Rev-1 Sols., LLC*, No. 17-cv-118, 2017 U.S. Dist. LEXIS 126017, at *6 (E.D. Wis. Aug. 9, 2017) ("The FDCPA requires a debt collector to accurately, and without deceptive language, state the amount of the debt owed.") (citing 15 U.S.C. § 1692e).

### *The WCA*

58. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

59. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

60. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

11

61. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

62. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

63. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages, injunctive remedies, and punitive damages against defendants on behalf of all customers who suffer similar injuries. *See,* Wis. Stats. §§ 426.110(1); 426.110(4)(e); 425.301. Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

64. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

65. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

12

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

66. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

67. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

68. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

69. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

70. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

71. Although the FDCPA does not authorize injunctive or declaratory relief or punitive damages, *see Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 507 n.3 (D. Md. Mar. 11, 2013), these forms of relief are available under the WCA. Wis. Stat. §§ 426.109(1); 426.110(4)(e); 426.110(6)(b); *Gonzales v. Kohn Law Firm, S.C.*, No. 13-cv-168, 2014 U.S. Dist. LEXIS 6750, at *8-17 (E.D. Wis. Jan. 17, 2014).

72. The WCA expressly authorizes individual actions to enjoin "any person who in … enforcing consumer credit transactions engages in … False, misleading, deceptive, or

unconscionable conduct in enforcing debts … arising from consumer credit transactions." Wis. Stat. § 426.110(2)(c); *see* Wis. Stat. § 426.110(3).

73. The WCA also authorizes "any customer affected by a violation of chs. 421 to 427 and 429 … or by a violation of the federal consumer credit protection act … [to] bring a civil action on behalf of all persons similarly situated, for actual damages by reason of such conduct or violation, together with penalties as provided in sub. (14), reasonable attorney fees and other relief to which such persons are entitled under chs. 421 to 427 and 429." Wis. Stat. § 426.110(1).

74. The WCA authorizes customers to bring class actions for injunctive relief and punitive damages to cure violations of Wis. Stat. § 427.104(1).

## COUNT I – FDCPA

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. According to Exhibits A & B, Defendant was applying an exorbitant and unlawful interest rate.

77. Exhibits A & B imply that Defendant will continue to apply an exorbitant and unlawful interest rate.

78. The "Total Due" stated in Exhibit B is false, deceptive, misleading, and confusing.

79. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, and 1692f(1).

14

## COUNT II – FDCPA

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Count II is brought in the alternative to Count I and assumes that the amount stated in Exhibit B is accurate and was lawfully calculated.

82. Exhibits A & B imply that Defendant misstated the amount of the debt in Exhibit A.

83. The "Total Due" stated in Exhibit A is false, deceptive, misleading, and confusing.

84. Exhibits A & B imply that Defendant will continue to apply an exorbitant and unlawful interest rate.

85. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT III – WCA

86. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

87. Defendant is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

88. According to Exhibits A & B, Defendant was applying an exorbitant and unlawful interest rate.

89. Exhibits A & B imply that Defendant will continue to apply an exorbitant and unlawful interest rate.

90. The "Total Due" stated in Exhibit A and/or the "Total Due" stated in Exhibit B is false, deceptive, misleading, and confusing.

91. The unsophisticated consumer would be confused and misled as to the amount and character of the debt.

92. Defendant violated the FDCPA.

93. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

94. Plaintiff brings this action on behalf of a Class consisting of: (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters by Defendant in the form of Exhibit A and Exhibit B to the complaint in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) stating that the debt is owed to "Endodontic Specialists of WI," (e) in which the "Total Due" increases over time due to the addition of interest, (f) at a rate greater than 18% APR, (g) where the letter in the form of Exhibit B was mailed between January 20, 2019 and January 20, 2020, inclusive, and (h) neither letter was not returned by the postal service.

95. The Class is so numerous that joinder is impracticable.

96. Upon information and belief, there are more than 50 members of the Class.

97. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A violates the FDCPA and/or the WCA.

98. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

99. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

100. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

101. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) punitive damages;

(d) injunctive relief;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: January 20, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com